# EXHIBIT G

**UNITED STATES OF AMERICA**
**DEPARTMENT OF TRANSPORTATION**
**FEDERAL TRANSIT ADMINISTRATION**

**MASTER AGREEMENT**

> **Commented [A1]:** This tracked-changes document is provided as a convenience to the reader, to show clearly the differences between versions of the Federal Transit Administration's Master Agreement. This document does not have the force and effect of law and is not meant to bind the public in any way. This document is intended only to provide clarity to the public regarding existing requirements under the law or agency policies.

For Federal Transit Administration Agreements authorized by
49 U.S.C. chapter 53 and Title 23, United States Code (Highways), as amended by the Infrastructure Investment and Jobs Act of 2021 (IIJA), the Fixing America's Surface Transportation (FAST) Act, the Moving Ahead for Progress in the 21st Century Act (MAP-21), the Safe, Accountable, Flexible, Efficient Transportation Equity Act: A Legacy for Users (SAFETEA-LU), the SAFETEA-LU Technical Corrections Act of 2008, or other federal laws that FTA administers.

**FTA MA(3~~2~~3)**
~~March 26, 2025~~DATE

http://www.transit.dot.gov

# TABLE OF CONTENTS

Table of Contents ................................................................................................................................. i
Preface ............................................................................................................................................. 1
    Statutory Authorities ................................................................................................................. 1
    Purpose of this Master Agreement ............................................................................................ 1
Generally Applicable Provisions ..................................................................................................... 3
    Section 1.    Terms of this Master Agreement and Compliance. ....................................... 3
    Section 2.    Definitions. .................................................................................................... 4
    Section 3.    Implementation. .......................................................................................... 12
    Section 4.    Ethics, Political Activity, Disqualification, and Certain Criminal Activity. ................ 19
    Section 5.    Federal Assistance. ..................................................................................... 27
    Section 6.    Non-Federal Share. ..................................................................................... 28
    Section 7.    Payments to the Recipient. ......................................................................... 30
    Section 8.    Records and Reports Related to the Award and the Underlying Agreement. .............. 41
    Section 9.    Record Retention and Access to Sites of Performance. ............................. 47
    Section 10.    Completion, Audit, Settlement, and Closeout. ......................................... 48
    Section 11.    Right of the Federal Government to Terminate. ....................................... 50
    Section 12.    Civil Rights. ............................................................................................... 51
    Section 13.    Planning. ................................................................................................... 59
    Section 14.    Private Enterprise. .................................................................................... 60
    Section 15.    Preference for United States Products and Services. ................................ 61
    Section 16.    Procurement. ............................................................................................ 62
    Section 17.    Patent Rights. ............................................................................................ 68
    Section 18.    Rights in Data and Copyrights. ................................................................ 69
    Section 19.    Use of Real Property, Equipment, and Supplies. ..................................... 72
    Section 20.    Transit Asset Management. ....................................................................... 77
    Section 21.    Insurance. .................................................................................................. 77
    Section 22.    Relocation and Real Property ................................................................... 78
    Section 23.    Construction. ............................................................................................. 79
    Section 24.    Employee Protections. .............................................................................. 80
    Section 25.    Early Systems Work Agreement. .............................................................. 82
    Section 26.    Environmental Protections. ....................................................................... 84
    Section 27.    State Management and Monitoring Systems. ........................................... 87
    Section 28.    Charter Service. ......................................................................................... 87

Section 29.   School Bus Operations. .................................................................................... 88
Section 30.   Geographic Information and Related Spatial Data. ................................... 88
Section 31.   Federal "$1 Coin" Requirements. .............................................................. 89
Section 32.   Public Transportation Safety. .................................................................... 89
Section 33.   Motor Carrier Safety. ................................................................................. 89
Section 34.   Safe Operation of Motor Vehicles. ............................................................ 90
Section 35.   Substance Abuse. ...................................................................................... 91
Section 36.   Protection of Sensitive Security and Other Sensitive Information. ........... 92
Section 37.   Special Notification Requirements for States. .......................................... 92
Section 38.   Freedom of Information. ........................................................................... 93
Section 39.   Disputes, Breaches, Defaults, and Litigation. ........................................... 94
Section 40.   Amendments to the Underlying Agreement. ............................................ 95
Section 41.   FTA's Transit Award Management System (TrAMS). ............................. 95
Section 42.   Information Obtained through Internet Links. .......................................... 96
Section 43.   Severability. ............................................................................................... 96
Special Provisions for Specific Programs ............................................................................... 97
Section 44.   Special Provisions for All Public Transportation Innovation, Technical Assistance or Workforce Development Programs. ................................................................................. 97
Section 45.   Special Provisions for the State Safety Oversight Grant Program. ........... 99
Section 46.   Special Provisions for the State Infrastructure Bank (SIB) Program. ....... 99
Section 47.   Special Provisions for the TIFIA and RRIF Programs. ........................... 100
Section 48.   Special Provisions for the Joint FTA–FRA Program. .............................. 101
Appendix A Tribal Transit Program—Applicable Provisions ............................................... 103

# UNITED STATES DEPARTMENT OF TRANSPORTATION
# FEDERAL TRANSIT ADMINISTRATION

## MASTER AGREEMENT

## PREFACE

### Statutory Authorities

This is the official Federal Transit Administration (FTA) Master Agreement that applies to each Underlying Agreement (Grant Agreement, Cooperative Agreement, Loan Agreement, Loan Guarantee Agreement, or Line of Credit Agreement) for a specific Award authorized by:

(a)   Federal transit laws, 49 U.S.C. chapter 53, as amended, including the following:

    (1)   The Infrastructure Investment and Jobs Act of 2021 (IIJA), Public Law No. 117-58, November 15, 2021, and other authorizing legislation that may be enacted;

    (2)   The Fixing America's Surface Transportation (FAST) Act, Public Law No. 114-94, December 4, 2015;

    (3)   The Moving Ahead for Progress in the 21st Century Act (MAP-21), Public Law No. 112- 141, July 6, 2012, as amended by the Surface Transportation and Veterans Health Care Choice Improvement Act of 2015, Public Law No. 114-41, July 31, 2015; and

    (4)   The Safe, Accountable, Flexible, Efficient Transportation Equity Act: A Legacy for Users (SAFETEA-LU), Public Law No. 109-59, August 10, 2005, as amended by the SAFETEA-LU Technical Corrections Act of 2008, Public Law No 110-244, June 6, 2008.

(b)   Continuing Resolutions or Other Appropriations Resolutions or Acts funding the Department of Transportation during Fiscal Year 2025.

(c)   Title 23, United States Code (Highways).

(d)   Other federal legislation that FTA administers, as FTA so determines.

### Purpose of this Master Agreement

This FTA Master Agreement contains the standard terms and conditions that apply to the Underlying Agreement with the Recipient, which Underlying Agreement may take the form of an:

(a)    FTA Grant Agreement, including an FTA Grant Agreement for an award of federal assistance under the Tribal Transit Program;

(b)    FTA Cooperative Agreement; or

(c)    Transportation Infrastructure Finance Innovation Act (TIFIA) or Railroad Rehabilitation and Improvement Financing (RRIF) Loan, Loan Guarantee, Line of Credit, Master Credit Agreement for a Project overseen by FTA, or State Infrastructure Bank (SIB) Cooperative Agreement.

THEREFORE, in consideration of the mutual covenants, promises, and representations herein, FTA and the Recipient agree as follows:

## GENERALLY APPLICABLE PROVISIONS

**Section 1.    Terms of this Master Agreement and Compliance.**

(a)  The Recipient must comply with all applicable federal laws, regulations, and requirements, and should follow applicable federal guidance, except as FTA determines otherwise in writing.

(b)  To assure compliance with federal laws, regulations, and requirements, the Recipient must take measures to assure that other participants in its Underlying Agreements (e.g., Third Party Participants) comply with applicable federal laws, regulations, and requirements, and follow applicable federal guidance, except as FTA determines otherwise in writing.

(c)  FTA may take enforcement action if the Recipient or a Third Party Participant violates an applicable federal law, regulation, or requirement, or does not follow applicable federal guidance.

(d)  FTA and the Recipient agree that not every provision of this Master Agreement will apply to every Recipient or Underlying Agreement.

   (1)  FTA has divided this Master Agreement into the "Preface," "Generally Applicable Provisions," and "Special Provisions for Specific Programs."

   (2)  This Master Agreement has an Appendix A illustrating the specific provisions of this Master Agreement that apply to the Tribal Transit Programs.

   (3)  Criteria determining which federal laws, regulations, requirements, and guidance apply include the type of Award, the federal law authorizing federal assistance for the Award, the federal law, regulations, or requirements governing how the Award must be implemented, the federal guidance pertaining to the Award, and the Recipient's legal status as a "state," "state instrumentality," a "local government," a federally recognized Indian Tribe (Indian Tribe), a "private nonprofit entity," a "private for-profit entity," or an individual.

(e)  As provided in federal laws, regulations, requirements, and guidance, FTA will enforce only those federal laws, regulations, requirements, and guidance that apply to the specific FTA Recipient, its Third Party Participants, or to any Project and related activities encompassed in the Award, the accompanying Underlying Agreement, and any Amendments thereto.

(f)  Each provision of this Master Agreement must be interpreted in context with all other provisions of this Master Agreement and the Underlying Agreement. If a single provision is read apart from the rest of this Master Agreement or the Underlying Agreement, that provision might not convey the extent of the Recipient's responsibility to comply with the requirements of this Master Agreement and the Underlying Agreement.

(g)  This Master Agreement does not have an Expiration Date. This Master Agreement continues to apply to the Recipient and its Underlying Agreement, until modified or superseded by a more recently enacted or issued applicable federal law, regulation, requirement, or guidance, or Amendment to this Master Agreement or the Underlying Agreement.

**Section 2.   Definitions.**

(a)  *List of Definitions*. In addition to the definitions provided in 49 U.S.C. § 5302, as amended, or in previous legislation if circumstances may require, the Recipient agrees that the following definitions apply:

  (1)  *Application* means the request for federal assistance submitted that is signed and dated by the Applicant or an official authorized to act on the behalf of the Applicant, and includes all explanatory, supporting, and supplementary documents filed with FTA by or on behalf of the Applicant, and has been reviewed by FTA staff and addresses FTA's comments and concerns. An application for federal assistance in the form of a Grant or Cooperative Agreement must be submitted in FTA's Transit Award Management System (TrAMS).

  (2)  *Approval*, unless FTA determines otherwise in writing, means a written statement of an authorized federal official transmitted electronically or in typewritten hard copy expressly permitting the Recipient to take or omit an action in connection with its Underlying Agreement, and signed by a federal official authorized to permit the Recipient to take or omit an action that may not be taken or omitted without the Federal Government's permission. Approval does not mean permission to take or omit a similar action other than the specific action for which approval was given and does not include an oral permission or interpretation, which has no legal force, authority, or effect. For purposes of this Master Agreement, the definition of "approval" also applies to "concurrence" and "waiver."

  (3)  *Associated Transit Improvement* means, with respect to a Project or an area to be served by a Project, an activity that is designed to enhance transit service or use and that is physically or functionally related to transit facilities.

4

  (1) The Drug Abuse Office and Treatment Act of 1972, as amended, 21 U.S.C. § 1101, et seq.;

  (2) The Comprehensive Alcohol Abuse and Alcoholism Prevention, Treatment and Rehabilitation Act of 1970, as amended, 42 U.S.C. § 4541, et seq.; and

  (3) The Public Health Service Act, as amended, 42 U.S.C. §§ 290dd – 290dd-2.

(j) *Access to Services for Persons with Limited English Proficiency*. The Recipient agrees to provide meaningful access to public transportation services to persons with limited understanding of English to comply with Title VI of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000d, *et seq.*, and its implementing regulation at 28 CFR § 42.405(d), and appliable U.S. Department of Justice guidance.

(k) *Other Nondiscrimination Laws, Regulations, Requirements, and Guidance*. The Recipient agrees to comply with other applicable federal nondiscrimination laws, regulations, and requirements, and follow federal guidance prohibiting discrimination.

(l) *Remedies*. Remedies for failure to comply with applicable federal Civil Rights laws, regulations, and requirements, and failure to follow guidance may be enforced as provided in those federal laws, regulations, requirements, or guidance.

(m) *~~Promoting Free Speech and Religious Liberty~~Federal Law and Public Policy Requirements*. The ~~r~~Recipient shall ensure that Federal funding is expended in full accordance with the U.S. Constitution, Federal Law, and statutory and public policy requirements: including, but not limited to, those protecting free speech, religious liberty, public welfare, the environment, and prohibiting discrimination; and the Recipient will cooperate with Federal officials in the enforcement of Federal law, including cooperating with and not impeding U.S. Immigration and Customs Enforcement (ICE) and other Federal offices and components of the Department of Homeland Security in the enforcement of Federal immigration law.

(n) *Federal Anti-Discrimination*.

  (1) Pursuant to section (3)(b)(iv)(A), Executive Order 14173, *Ending Illegal Discrimination and Restoring Merit-Based Opportunity*, the Recipient agrees that its compliance in all respects with all applicable Federal anti-discrimination laws is material to the government's payment decisions for purposes of section 3729(b)(4) of title 31, United States Code.

  (2) Pursuant to section (3)(b)(iv)(B), Executive Order 14173, *Ending Illegal Discrimination and Restoring Merit-Based Opportunity*, by entering into this Agreement, the Recipient certifies that it does not operate any programs

58