UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

|  |  |
|---|---|
| STATE OF CALIFORNIA; STATE OF ILLINOIS; STATE OF NEW JERSEY; STATE OF RHODE ISLAND; STATE OF MARYLAND; STATE OF COLORADO; STATE OF CONNECTICUT; STATE OF DELAWARE; STATE OF HAWAII; STATE OF MAINE; COMMONWEALTH OF MASSACHUSETTS; PEOPLE OF THE STATE OF MICHIGAN; STATE OF MINNESOTA; STATE OF NEVADA; STATE OF NEW MEXICO; STATE OF NEW YORK; STATE OF OREGON; STATE OF VERMONT; STATE OF WASHINGTON; and STATE OF WISCONSIN,<br>    Plaintiffs,<br><br>v.<br><br>UNITED STATES DEPARTMENT OF TRANSPORTATION; SEAN DUFFY, *in his official capacity as Secretary of Transportation*,<br>    Defendants. | C.A. No. 25-cv-208-JJM-PAS |

PRELIMINARY INJUNCTION

Before the Court is twenty States' Motion for a Preliminary Injunction in a case filed against Defendants United States Department of Transportation ("U.S. DOT") and Secretary Sean Duffy ("collectively Defendants") after Defendants adopted an Immigration Enforcement Condition ("IEC") on federal transportation grants that requires State recipients of those funds to cooperate with federal officials in the

enforcement of federal immigration law.[1]  ECF No. 41 (as amended by ECF No. 49). Essentially, U.S. DOT is now requiring future grant applicants to agree to adhere to the IEC when they sign the grant application.  Because some applicants face a June 20, 2025, deadline to apply for certain grants whose applications include the IEC, the Court issues this timely short Order.[2]

Defendants initially raise two jurisdictional arguments.  First, Defendants contend that some of the States' claims may be subject to statutory provisions that confer exclusive jurisdiction on federal appellate courts to hear challenges to, for example, orders issued by the Federal Aviation Administration.  The statutes cited specify that federal appellate courts have exclusive jurisdiction only for a narrow set of challenges to an "order" issued "*under*" the specific statutes listed.  These jurisdictional statutes do not apply here because the U.S. DOT is not exercising its authority "*under*" the specific statutes listed in these jurisdictional provisions. Rather, it is the Duffy Directive issued by the U.S. DOT that the States challenge, and thus jurisdiction is proper in the district court.  *Loan Syndications & Trading Ass'n v. S.E.C.*, 818 F.3d 716, 722 (D.C. Cir. 2016).

---

[1] Secretary Duffy issued the "Duffy Directive" in April 2025, requiring transportation grant recipients to "cooperate with Federal officials in the enforcement of Federal Law, including cooperating with and not impeding U.S. Immigration and Customs Enforcement (ICE) and other Federal offices and components of the Department of Homeland Security in and the enforcement of Federal immigration law." ECF No. 1-2 at 2.  The U.S. DOT has added the IEC to general terms and conditions governing all federal funding administered by several subagencies within U.S. DOT as well as to the terms and conditions for specific federal grants.  It has demanded that state officials execute grant agreements with the IEC language.

[2] The Court relies on the facts alleged in the States' Complaint but, considering the brief time frame, does not restate them here.

Second, Defendants cite the Tucker Act in arguing that this case should be heard in the Court of Claims. This Court, and many others, has ruled on this issue and found that the States' challenges to the grant conditions are not claims sounding in contract. The States bring claims under the Administrative Procedures Act ("APA") and the United States Constitution, seeking equitable relief to enjoin Defendants' actions in conditioning transportation funding on cooperation with the implementing of immigration enforcement, not specific performance of any grant agreements. This relief "'is not a claim for money damages,'" precluded under the APA—even though "'it is a claim that would require the payment of money by the federal government.'" *Bowen v. Massachusetts*, 487 U.S. 879, 894 (1988) (quoting *Maryland Dep't. of Human Res. v. Dep't of Health and Human Servs.*, 763 F.2d 1441, 1446 (1985)). Accordingly, because the States' challenges are based on statutory and constitutional violations and the relief they seek is equitable, the essence of their claims are *not* contractual, so they are not subject to the exclusive jurisdiction of the Court of Claims under the Tucker Act. *See Crowley Gov't Servs., Inc. v. Gen. Servs. Admin.*, 38 F.4th 1099, 1106-08 (D.C. Cir. 2022).

The Court will now move on to the merits of the States' preliminary injunction motion. "To secure a preliminary injunction, a plaintiff must show '(1) a substantial likelihood of success on the merits, (2) a significant risk of irreparable harm if the injunction is withheld, (3) a favorable balance of hardships, and (4) a fit (or lack of friction) between the injunction and the public interest.'" *NuVasive, Inc. v. Day*, 954 F.3d 439, 443 (1st Cir. 2020) (quoting *Nieves-Márquez v. Puerto Rico*, 353 F.3d 108,

120 (1st Cir. 2003)). In evaluating whether plaintiffs have met the most important requirement of likelihood of success on the merits, a court must keep in mind that the merits need not be "conclusively determine[d];" instead, at this stage, decisions "are to be understood as statements of probable outcomes only." *Akebia Therapeutics, Inc. v. Azar*, 976 F.3d 86, 93 (1st Cir. 2020) (partially quoting *Narragansett Indian Tribe v. Guilbert*, 934 F.2d 4, 6 (1st Cir. 1991)). The Court now turns to the four factors.

### Likelihood of Success on the Merits

We begin with what courts have called a key factor—a consideration of the movant's likelihood of success on the merits. "To demonstrate likelihood of success on the merits, plaintiffs must show 'more than mere possibility' of success–rather, they must establish a 'strong likelihood' that they will ultimately prevail." *Sindicato Puertorriqueño de Trabajadores, SEIU Loc. 1996 v. Fortuño*, 699 F.3d 1, 10 (1st Cir. 2012) (per curiam) (quoting *Respect Maine PAC v. McKee*, 622 F.3d 13, 15 (1st Cir. 2010)). The States' claims are as follows:

In **Count I**, the States allege that the Executive's actions here are ultra vires because the U.S. DOT lacks any statutory authority to impose the IEC as a requirement for federal funding that was specifically appropriated for transportation because Congress has not granted the U.S. DOT any power to conscript the State government into federal immigration enforcement efforts. In **Count II**, the States allege a violation of the Spending Clause of the U.S. Constitution, (U.S. Const. art. I,

4

§ 8, cl. 1),³ because the IEC imposes conditions on federal funds that overstep Congress's spending authority, it is impermissibly vague, ambiguous, and retroactively imposed, is a condition wholly unrelated to the purposes of the transportation funding and is coercive.  In **Count III**, the States allege that the Defendants' actions violate the APA because they exceed their statutory authority by issuing the Duffy Directive and including the IEC as a requirement of federal transportation funding.  In **Count IV**, the States allege that the Defendants' actions violate the APA because the policy of imposing the IEC as a requirement for U.S. DOT funding is arbitrary and capricious in multiple respects.  In **Count V**, the States allege that the Duffy Directive and IEC violate constitutional provisions and principles, including the Spending Clause, in violation of the APA.

The Court has determined based on the record before it at this time, that the States are likely to succeed on the merits of some or all their claims.  Defendants' conduct violates the APA because they acted outside of their statutory authority when they issued the Duffy Directive and imposed the IEC categorically across all U.S. DOT grants when Congress appropriated those funds for transportation purposes, not immigration enforcement purposes.  *See City of Providence v. Barr*, 954 F.3d 23, 31 (1st Cir. 2020).  Congress did not authorize or grant authority to the Secretary of

---

³ "The Congress shall have Power To lay and collect Taxes, Duties, Imposts and Excises, to pay the Debts and provide for the common Defence and general Welfare of the United States; but all Duties, Imposts and Excises shall be uniform throughout the United States; . . ."

Transportation to impose immigration enforcement conditions on federal dollars specifically appropriated for transportation purposes.

The IEC, backed by the Duffy Directive, is arbitrary and capricious in its scope and lacks specificity in how the States are to cooperate on immigration enforcement in exchange for Congressionally appropriated transportation dollars–grant money that the States rely on to keep their residents safely and efficiently on the road, in the sky, and on the rails.

These conditions violate the Spending Clause as well; the IEC is not at all reasonably related to the transportation funding program grants whose statutorily articulated purposes are for the maintenance and safety of roads, highways, bridges, and development of other transportation projects. The Government does not cite to any plausible connection between cooperating with ICE enforcement and the congressionally approved purposes of the Department of Transportation. Under the Defendants' position, the Executive would be allowed to place any conditions it chose on congressionally appropriated funds, even when it would be entirely unrelated to the Department's purpose. Such is not how the three equal branches of government are allowed to operate under our Constitution.

The Court finds that the record now before it confirms that the States' claims are likely to succeed because the Defendants' actions here violate the Constitution and statutes of the United States. Having found that the States met this key element, the Court now moves on to the remaining three injunction factors.

## Irreparable Harm

"District courts have broad discretion to evaluate the irreparability of alleged harm and to make determinations regarding the propriety of injunctive relief." *K–Mart Corp. v. Oriental Plaza, Inc.*, 875 F.2d 907, 915 (1st Cir. 1989) (quoting *Wagner v. Taylor*, 836 F.2d 566, 575–76 (D.C. Cir. 1987)). There are "relevant guideposts" to guide that discretion—"the plaintiff's showing must possess some substance" and "the predicted harm and the likelihood of success on the merits must be juxtaposed and weighed in tandem." *Ross-Simons of Warwick, Inc. v. Baccarat, Inc.*, 102 F.3d 12, 19 (1st Cir. 1996) (citations omitted). The Court finds that the States have demonstrated they will face irreparable and continuing harm if forced to agree to Defendants' unlawful and unconstitutional immigration conditions imposed in order to receive federal transportation grant funds. *See* ECF No. 49 at 47-52. The States face losing billions of dollars in federal funding, are being put in a position of relinquishing their sovereign right to decide how to use their own police officers, are at risk of losing the trust built between local law enforcement and immigrant communities, and will have to scale back, reconsider, or cancel ongoing transportation projects.[4] *Id.*

---

[4] To try to avoid an injunction, Defendants argue that there is no irreparable harm if the Court were to interpret the Duffy Directive as simply requiring the States to follow federal law, which they should be able to easily do. The problem with that solution is that it would require this Court to interpret the Duffy Directive in a way that both ignores its plain meaning and its obviously broad intention to coerce the States into cooperating with federal immigration enforcement.

## Balance of the Equities and Public Interest

The final two preliminary injunction factors—balance of the equities and public interest—"merge when the Government is the opposing party." *Nken v. Holder*, 556 U.S. 418, 435 (2009). When weighing these factors, the Court "must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief ... pay[ing] particular regard for the public consequences" that would result from granting the emergency relief sought. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008) (quotation marks and citations omitted). Here, the two factors weigh strongly in favor of equitable relief.

If Defendants are prevented from conditioning transportation grants on an agreement to cooperate with ICE, they would merely have to consider the applicant's application and make the awards as usual. On the other hand, if the Court denies the preliminary injunction, the States will be forced to commit their state and local law enforcement (and potentially other state and local actors) to the mission of federal immigration enforcement or sacrifice securing billions of dollars in federal funding that Congress intended to be used for transportation purposes. The fact that the States have shown a likelihood of success on the merits strongly suggests that an injunction would serve the public interest. Moreover, the public interest further favors an injunction because absent such an order, there is a substantial risk that the States and its citizens will face a significant disruption in transportation services jeopardizing ongoing projects, ones in development for which resources have been

expended, and the health and safety of transportation services that are integral to daily life.

In light of the conclusions that Defendants' adoption of the IEC is unconstitutional and/or unlawful because it: (a) violates the APA; (b) is ultra vires; and (c) to the extent that it relies on congressional authority, exceeds Congress's powers under the Spending Clause, the Court GRANTS the Plaintiffs" Motion for a Preliminary Injunction[5] (ECF No. 41 as amended by ECF No. 49) as to the States and their governmental subdivisions and ORDERS as follows:

1. Defendants are prohibited from implementing or enforcing the Immigration Enforcement Condition as set forth in the Duffy Directive.

2. Defendants are prohibited from withholding or terminating federal funding based on the Immigration Enforcement Condition as set forth in the Duffy Directive absent specific statutory authorization.

3. Defendants are prohibited from taking adverse action against any state entity or local jurisdiction, including barring it from receiving or making it ineligible for federal funding, based on the Immigration Enforcement Condition, absent specific statutory authorization.

4. The Court forbids and enjoins any attempt to implement the Immigration Enforcement Condition, and any actions by the Defendants to implement or enforce the Immigration Enforcement Condition.

---

[5] This Order binds Defendants' officers, agents, employees, attorneys, and other persons who are in active concert or participation with anyone described in Rule 65(d)(2)(A) or (B).  Fed. R. Civ. P. 65(d)(2).

The Court retains jurisdiction to monitor Defendants' compliance with this Preliminary Injunction Order.  The Court will not require that the States post a bond in accordance with Federal Rule of Civil Procedure 65(c).  Additionally, because the Court found that the States are likely to succeed on the merits of their claims and that large-scale irreparable harm would occur without the preliminary injunction, the Court DENIES Defendants' request to stay this Order.  *See* ECF No. 51 at 42-43.

IT IS SO ORDERED.

*s/John J. McConnell, Jr.*

_____
John J. McConnell, Jr.
Chief Judge
United States District Court

June 19, 2025