**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND**

| | |
|---|---|
| STATE OF CALIFORNIA, *et al.*,<br><br>*Plaintiffs*,<br><br>v.<br><br>UNITED STATES DEPARTMENT OF TRANSPORTATION, *et al.*,<br><br>*Defendants*. | No. 1:25-cv-00208-JJM-PAS |

# EXHIBIT 3

Declaration of James P. Gray

## DECLARATION OF JAMES P. GRAY

I, James P. Gray, declare as follows:

1. I am over the age of 18 years and a U.S. citizen. I know the following facts based on my own personal knowledge, through agency personnel who have assisted in gathering this information, or from documents that have been provided to and reviewed by me. If called as a witness, I could and would testify competently to the matters set forth below.

2. I am the Secretary of the Kentucky Transportation Cabinet (KYTC), as appointed by Governor Andy Beshear, and act as the Chief Executive Officer for the Cabinet. The Office of the Secretary is the central point of contact with the general public and external organizations and serves as the main policymaking arm of the Cabinet. Organizationally, KYTC is divided into four departments: Aviation, Vehicle Regulation, Rural and Municipal Aid, and Highways. Each department is headed by a commissioner directly responsible to the Secretary. Other organizational units reporting to the Office of the Secretary include the Offices of: Support Services, Transportation Delivery, Audits, Human Resource Management, Information Technology, Legal Services, Public Affairs, Budget and Fiscal Management, Civil Rights and Small Business Development, and the Office of Inspector General.

3. Before being appointed to serve as Cabinet Secretary in December 2019, I was the Mayor of the city of Lexington, Kentucky, from 2010 to 2018.

### Background

4. KYTC's mission is to provide a safe, efficient, environmentally sound and fiscally responsible transportation system that delivers economic opportunity and

1

enhances the quality of life in Kentucky.

5. KYTC oversees a comprehensive transportation system that includes about 28,000 miles of highways, 9,100 bridges, and 59 public use airports.

6. Funds received from the U.S. Department of Transportation (U.S. DOT) in state fiscal year 2024-25 and 2025-26 are expected to total $1.3 billion each year, which is 38 percent (38%) of KYTC's total annual budget.

7. As part of my regular job duties, I oversee employees who manage federal grants.

8. KYTC works closely with state and federal agencies and Kentucky local jurisdictions to ensure grant dollars are used effectively and efficiently throughout the commonwealth.

9. Safety is KYTC's number one priority. The programs funded by these federal grants are vital to protect the residents of Kentucky. Because KYTC manages projects for all modes of transportation, funding reductions or loss of funding would be significantly detrimental to the Commonwealth of Kentucky and its residents. All modes would be impacted by delayed construction, operations support, maintenance, and administrative support. If KYTC cannot continue with planned federal projects, the safety of Kentucky's roads and ancillary facilities, railroad crossings, airports, riverports, and mass transit systems will be jeopardized. Lack of federal funding for safety improvements results in greater injury, property damage, and loss of life.

10. Although not an exclusive list of the many federal grants KYTC is awarded each year, they include grants from the Federal Highway Administration, Federal Transit Administration, Federal Motor Carrier Safety Administration, and Federal Aviation Administration that are critical to programs vital to keeping our roadways,

airspace, waterways, transit systems, and pedestrians safe.

A. **KYTC's Use of Federal Highway Administration Funds**

11. KYTC has obligated $1,085,101,056 in Federal Fiscal Year (FFY) 2024 Federal-Aid Highway Funding and $21,153,600 in U.S. DOT competitive grant funding. As of July 7, 2025, KYTC has obligated $818,100,921 in FFY 2025 Federal-Aid Highway Funding and $120,810,372 in U.S. DOT competitive grant funding.

12. Major projects already obligated in FFY 2025 include the expansion of I-69 in Henderson County in anticipation of a new Ohio River bridge crossing, reconstruction of the I-264/US 42 Interchange in Louisville (Jefferson County) to alleviate traffic congestion, widening a portion of I-64 between Louisville and Lexington from four lanes to six, and improving the Mountain Parkway in Eastern Kentucky. Plans are also in place for new Ohio River bridges in Northern Kentucky (Brent Spence Bridge) and in Western Kentucky (I-69, mentioned previously). The new bridges will improve major thoroughfare upgrades for freight and commercial traffic as well as for bi-state commuters.

13. All of these projects and others would not be possible without federal transportation funding. Project work stoppages and delays that would accompany a reduction in federal transportation funding would needlessly result in additional costs and prolonged exposure to traffic congestion and unsafe driving conditions.

B. **KYTC's Use of Federal Transit Administration Funds**

14. KYTC was awarded apportionments of $33,543,904 from the Federal Transit Administration in FFY 2024 and $34,282,846 for FFY 2025. This funding is used to replace and expand bus and bus facilities, to include maintenance garages, in rural areas and communities outside of Kentucky's major metropolitan areas.

15. Vehicle maintenance and timely replacement are necessary to provide safe, efficient, and dependable transportation. Federal operating funds are utilized for fuel, insurance, driver salaries and other expenses associated for running transit services.

16. Without transit services, many Kentucky citizens would be without transportation to doctors' offices, medical care facilities, places of employment, grocery stores, and other locations of vital necessity. The elderly, individuals with low income, and persons with disabilities would be most affected if these funds were not available.

**C.    KYTC's Use of Federal Motor Carrier Safety Administration Funds**

17. The Federal Motor Carrier Safety Administration ("FMCSA") awarded KYTC with $3,690,568 in federal grant funds in FFY 2024 and is awaiting announcement of FFY 2025 grant award totals. KYTC receives Motor Carrier Safety Assistance Program (MCSAP), Commercial Driver License Program Implementation (CDLPI), and High Priority – Innovative Technology Deployment (HP-ITD) funds which are essential to maintaining safety on Kentucky's highways. These federal grants fund replacement and maintenance of roadside screening equipment (at weigh stations); enhancement and expansion of truck parking management systems; missing commercial motor vehicle (CMV) license plate data identification and reporting; motor carrier portal enhancements and maintenance; installation and maintenance of tire pressure detection systems; data quality analysis and monitoring; enhancement to overweight/over dimensional systems; and training and outreach regarding the Federal Motor Carrier Safety Administration's (FMCSA) commercial driver license requirements.

18. FMCSA's mission is to reduce crashes, injuries, and fatalities involving

large trucks and buses. These federal grants aid in the deployment, upgrade and maintenance of technology that enhances the safety of commercial motor vehicle (CMV) operations and improves efficiencies in credentialing and tax administration of CMV's in Kentucky. This federal funding also provides financial assistance to carry out and improve the national Commercial Driver License (CDL) program.

19. These grant funds also allow KYTC to take measures to ensure that drivers follow hours of service rules, which reduces crashes caused by sleep deprivation.

20. Without federal grant funding from FMSCA, Kentucky highways will be less safe. Motor carriers are heavy vehicles with long slowing and stopping distances and regular inspections of equipment are needed to avoid crashes. Motor carrier crashes are devastating to other motor vehicles causing significant property damage, injury, and death. Without these grant funds, the quantity and quality of federally mandated oversight and inspection of vehicles and drivers will be significantly diminished, making roads and the traveling public less safe.

**D.    KYTC's Use of National Highway Transportation Safety Administration Funds**

21. KYTC receives National Highway Transportation Safety (NHTSA) grant awards to promote highway safety. The Kentucky Office of Highway Safety distributes these awarded federal funds to promote media campaigns, educational programs and enforcement to address distracted driving, impaired driving, occupant protection and other highway safety concerns. These awards are also used to purchase equipment to support law enforcement, car passenger safety initiatives and KYTC staff salaries to implement and administer highway safety programs.

22. For FFY 2024, KYTC was awarded $10,407,016 to carry out this work. For FFY 2025, KYTC expects to receive $10,650,024 in federal grant award dollars,

and intends to submit additional federal grant applications. This funding is crucial for the Kentucky Office of Highway Safety to continue to fund its partners and staff to carry out its mission to prevent serious injury crashes and fatalities on Kentucky roadways.

### E. KYTC's Use of Federal Aviation Administration Funds

23. KYTC has historically applied for and relied on grant funds under the Federal Aviation Administration's (FAA) Airport Improvement Program (AIP) to pay for improvements and necessary changes to its airports, including smaller general aviation airports.

24. In Kentucky, commercial and general aviation airports will apply directly to the FAA for federal grants and funding. KYTC applies to the FAA for the four state-owned airports in Kentucky. In total, the statewide allocation of funds from the FAA average $8 million annually. FAA grants to commercial airports within Kentucky are not included in this amount and can be more than $100 million annually.

25. In FFY 2024, KYTC was awarded AIP entitlements totaling $205,000 and, under the Airport Improvement Grant (AIG) program from the Infrastructure and Investment and Jobs Act (IIJA), KYTC received $156,000. In FFY 2025 KYTC has applied for a total of $1.8 million in AIP funding and $1 million in Airport Terminal Program (ATP) funding.

26. Annually the FAA grants each airport $150,000. These annual grant amounts can be saved and accumulated for up to five years to help fund a more significant project at the specific airport. Fifty-three (53) airports in Kentucky participate, totaling just under $8 million annually. These projects include the construction of a new airport in Gallatin

6

County, construction of a new state-of-the-art terminal in Paducah, and funding for the maintenance of critical infrastructure at all of our general aviation airports.

27. When airport runways age they deteriorate, making it less safe for planes to take off and land. Further, when airport facilities do not keep up with federal requirements and design standards there could be an increase in safety concerns. For example, runway navigational aids and runway markers ensure pilots are able to navigate safely.

28. Kentucky airports will be less safe without these federal grant funds.

### The FFY 2025 Immigration Enforcement Requirements and its Impact on KYTC's Grant Administration

29. On April 24, 2025, KYTC received a copy of the April 24, 2025 letter from Secretary of Transportation Sean Duffy issued to all recipients of U.S. DOT funding stating that recipients' "legal obligations require cooperation generally with Federal authorities in the enforcement of Federal law, including cooperating with and not impeding U.S. Immigration and Customs Enforcement (ICE) and other Federal offices and components of the Department of Homeland Security in the enforcement of Federal immigration law." This letter warned that "failure to cooperate ... in the enforcement of Federal law" will "jeopardize your continued receipt of Federal financial assistance from DOT and could lead to a loss of Federal funding from DOT."

30. KYTC has seen language related to immigration enforcement terms and conditions in several grants, including the Bridge Investment Program, Competitive Highway Bridge Program, Infrastructure for Rebuilding America (INFRA), Promoting Resilient Operations for Transformative, Efficient, and Cost-saving Transportation Program (PROTECT), and Rebuilding American Infrastructure with

Sustainability and Equity (RAISE).

31. It is not clear to me what U.S. DOT means to include within the broad phrase, "cooperating with ... U.S. Immigration and Customs Enforcement (ICE) and other Federal offices and components of the Department of Homeland Security in the enforcement of Federal immigration law." I am not aware of what limits there may be, if any, to "cooperating with ... enforcement of Federal immigration law." I am also not aware of any definitions, citations, or criteria that might define what activities may be required to "cooperate" with U.S. Immigration and Customs Enforcement."

32. As Secretary of KYTC, I am not aware of KYTC staff ever being required to enforce or participate in the enforcement of federal civil immigration law. Further, because KYTC is responsible for duties related to transportation infrastructure and promoting safe driving, KYTC staff does not have the expertise, training or capacity to enforce immigration law.

33. If KYTC attempts to comply with the federal government's new funding condition, KYTC would be required to monitor compliance with the new federal civil immigration enforcement condition as to all its many sub-grantees of grant awards. KYTC currently does not have the capability, training or subject matter expertise to monitor sub-grantees' level of cooperation and coordination in civil immigration enforcement. KYTC would be required to allocate additional funds annually to hire staff that is properly trained and experienced to monitor these specified duties. This, in turn, may mean the diversion of funds that KYTC would no longer have available for activities such as highway planning, design, and construction projects. This would seriously hinder the state's ability to deliver the current federally-

8

funded programs, which would put the state's federal funding at risk.

34. Alternatively, if KYTC personnel themselves were required to participate in federal civil immigration enforcement, KYTC would incur costs in trainings, the creation of procedures and guidelines, and lost personnel time diverted to those tasks to be included in "cooperating with ... enforcement of Federal immigration law."

### Harm Loss of Federal Grant Funds Would Cause

35. Without access to FFY 2025 federal transportation grant funding, KYTC will not have sufficient regular state or federal formula funds available to pursue those projects for which the grant funding has been requested and received. Any delays and/or cancellations of awarded federal grant funding will have immediate and long-term adverse impacts to Kentucky's transportation program. Projects such as the planned Ohio River bridges require project planning years in advance and require advanced commitment of KYTC staffing and resources, including hiring staff and negotiating and implementing contracts. If KYTC cannot obtain the anticipated federal funding, this could lead to service cuts, layoffs, and cancellation of contracts and associated penalties. Consequently, any denials or cuts in expected federal funds will negatively impact virtually all KYTC operations. Any pause or termination in federal funding would devastate the state's ability to provide safe and reliable transportation solutions to its residents and visitors.

36. Losing U.S. DOT grants would severely obstruct and undermine KYTC's mission, even if the funding were restored at a later date, because any delay in funding equates to increases in project and program costs and lost opportunities for improved safety and functionality of the transportation system.

I declare under penalty of perjury that the foregoing is true and correct, and that

9

this declaration was executed on July 10, 2025 in Frankfort, Kentucky.

                                                                                                                                                    James P. Gray