UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | |
|---|---|
| STATE OF CALIFORNIA, *et al.*,<br><br>                         Plaintiffs,<br>v.<br><br>U.S. DEPARTMENT OF<br>TRANSPORTATION, *et al.*,<br><br>                         Defendants. | Civil Action No. 25-cv-00308-JJM-PAS<br><br>**DECLARATION OF<br>LOREN A. SMITH, JR.** |

I, Loren A. Smith, Jr., pursuant to 28 U.S.C. Section 1746, hereby declare as follows:

      1.      I am the Deputy Assistant Secretary for Transportation Policy at the U.S. Department of Transportation ("DOT"). I have served in this role since January 20, 2025. My duties and responsibilities include managing DOT's Office of Transportation Policy and advising the Secretary and senior leaders on sensitive policy issues arising throughout DOT.

      2.      I make this declaration based upon personal knowledge and information made known to me in the course of my duties.

      3.      Congress has identified DOT's mission as the "development of transportation policies and programs" to support critical "national objectives," including but not limited to, the "security of the United States," the "general welfare," and "stability." 49 U.S.C. § 101. Enforcement of federal immigration laws is a critical part of furthering those national objectives.

      4.      On January 29, 2025, Secretary of Transportation Sean Duffy issued an order setting forth principles to govern the implementation and administration of DOT policies, programs, and activities. The order, which is annexed hereto as Exhibit A, stated in relevant part (emphasis added):

>    (f) *To the maximum extent permitted by law,* DOT-supported or -assisted programs and activities, including without limitation, all DOT grants, loans, contracts, and DOT-supported or -assisted State contracts, shall prioritize projects and goals that: . . .
>    (v) require local compliance or cooperation with Federal immigration enforcement and with other goals and objectives specified by the President of the United States or the Secretary.

5. On April 24, 2025, Secretary Duffy sent a letter to all recipients of DOT financial assistance to make clear that it is "the policy of the Department to award and to continue to provide Federal financial assistance only to those recipients who comply with their obligations," and that recipients of DOT funding "are obligated to comply fully with all applicable Federal laws and regulations." The letter stated that "your legal obligations require cooperation generally with Federal authorities in the enforcement of Federal law, including cooperating with and not impeding U.S. Immigration and Customs Enforcement (ICE) and other Federal offices and components of the Department of Homeland Security in the enforcement of Federal immigration law." The letter is annexed hereto as Exhibit B.

6. At the direction of the Office of Transportation Policy, operating administrations within the Department added language to reflect this reminder in DOT grant agreements. In general, the added language requires recipients to cooperate with Federal officials in the enforcement of Federal immigration law, including cooperating with and not impeding U.S. Immigration and Customs Enforcement and other Federal offices and components of the Department of Homeland Security in the enforcement of Federal immigration law.

7. On July 2, 2025, Secretary Duffy sent a letter to all recipients of DOT financial assistance to inform them that DOT will no longer enforce certain Biden Administration requirements related to climate change; diversity, equity, and inclusion; environmental justice; and other matters. The letter contrasts those mandates—which were not required by statute or

regulation—with language the Trump Administration has inserted into agreements requiring compliance with ***already existing legal requirements*** . . . including, among others, ***existing legal requirements related to immigration enforcement*** and the prohibition of discrimination" (emphasis added). The letter is annexed hereto as Exhibit C.

8. The grant conditions requiring DOT funding recipients to cooperate with Federal immigration enforcement do not create a new legal obligation or require recipients to take any action that is not already required by law. Instead, the conditions merely emphasize that recipients, consistent with grant conditions generally requiring compliance with Federal law, must comply with their existing obligations under immigration-related Federal statutes and regulations, including 8 U.S.C. § 1324 and 8 U.S.C. § 1327 (as also explained in the Secretary's April 24 letter). DOT will not take any investigative or enforcement actions that are inconsistent with the interpretation of the grant conditions that is expressed in this paragraph.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed this 15th day of August, 2025.

_____
Loren A. Smith, Jr.
Deputy Assistant Secretary for Transportation Policy
U.S. Department of Transportation

# EXHIBIT A



**U.S. Department of Transportation**

Office of the Secretary of Transportation

SUBJECT: ENSURING RELIANCE UPON SOUND ECONOMIC ANALYSIS IN DEPARTMENT OF TRANSPORTATION POLICIES, PROGRAMS, AND ACTIVITIES



DOT Order

1. PURPOSE

This Order updates and resets the principles and standards underpinning U.S. Department of Transportation (Department or DOT) policies, programs, and activities to mandate reliance on rigorous economic analysis and positive cost-benefit calculations and ensure that all DOT grants, loans, contracts, and DOT-supported or -assisted State contracts bolster the American economy and benefit the American people.

2. CANCELLATION

None

3. APPLICABILITY AND SCOPE.

This Order applies to all the Department's Operating Administrations (OA) and the Departmental Offices in the Office of the Secretary of Transportation (OST).[1]

4. EFFECTIVE DATE

This Order is effective upon its date of execution.

5. POLICIES.

The following principles govern the implementation and administration of all DOT policies, programs, and activities:

    a. The Department's grantmaking, lending, policymaking, and rulemaking activities shall be based on sound economic principles and analysis supported by rigorous cost-benefit requirements and data-driven decisions. This requirement shall apply

---

[1] The terms "Operating Administration" and "OA" hereinafter refer to both the Department's operating administrations and the OST Departmental Offices.

regardless of whether the activities in question fall below the economic threshold required for review by the Office of Information and Regulatory Affairs.

b. To engage in grantmaking, lending, policymaking, or rulemaking, the benefits must be estimated to outweigh the costs. The calculation of the "social cost of carbon" is marked by logical deficiencies, a poor basis in empirical science, politicization, and the absence of a foundation in legislation. Consequently, the Administrator of the Environmental Protection Agency has been ordered by the President to issue guidance to address these harmful and detrimental inadequacies. Prior to issuance of that guidance, DOT shall ensure estimates to assess the value of changes in greenhouse gas emissions resulting from agency actions, including with respect to the consideration of domestic versus international effects and evaluating appropriate discount rates, are, to the extent permitted by law, consistent with the guidance contained in OMB Circular A-4 of September 17, 2003 (Regulatory Analysis).

c. Statutes governing DOT policies, programs, and activities shall be administered to identify and avoid, to the extent practicable, relevant, appropriate, and consistent with law, adverse impacts on families and communities. Adverse impacts may include, but are not limited to, noise; water pollution; soil contamination; a denial of or a reduction in transportation services; increased difficulty in raising children in a safe and stable environment; and destruction or disruption of community cohesion, safety, or economic vitality.

d. Statutes governing DOT policies, programs, and activities shall also be administered to maximize, to the extent practicable, relevant, appropriate, and consistent with law, benefits for families and communities. The benefits may include, but are not limited to, economic opportunities, such as increased access to jobs, healthcare facilities, recreational activities, commercial activity, or any actions or project components that will help alleviate poverty, enhance safety, and primarily benefit families and communities by improving the quality of their lives, raising their standard of living, or enabling them to participate more fully in our economy.

e. DOT-supported or -assisted programs and activities, including without limitation, all DOT grants, loans, contracts, and DOT-supported or -assisted State contracts, shall not be used to further local political objectives or for projects and goals that are purely local in nature and unrelated to a proper Federal interest. DOT programs and activities should instead prioritize support and assistance for projects and goals that are consistent with the proper role of the Federal government in our system of federalism, have strong co-funding requirements, adhere faithfully to all Federal statutory Buy America requirements, and not depend on continuous or future DOT support or assistance for improvements or ongoing maintenance.

f. To the maximum extent permitted by law, DOT-supported or -assisted programs and activities, including without limitation, all DOT grants, loans, contracts, and DOT-supported or -assisted State contracts, shall prioritize projects and goals that:

      i. utilize user-pay models;
      ii. direct funding to local opportunity zones where permitted;
      iii. to the extent practicable, relevant, appropriate, and consistent with law, mitigate the unique impacts of DOT programs, policies, and activities on families and family-specific difficulties, such as the accessibility of transportation to families with young children, and give preference to communities with marriage and birth rates higher than the national average (including in administering the Federal Transit Administration's Capital Investment Grant program);
      iv. prohibit recipients of DOT support or assistance from imposing vaccine and mask mandates; and
      v. require local compliance or cooperation with Federal immigration enforcement and with other goals and objectives specified by the President of the United States or the Secretary.

6. **RESPONSIBILITIES.**

    a. The General Counsel is the chief legal officer of the Department with final authority on all questions of law for all components of DOT. The Office of the General Counsel (OGC) shall provide the legal advice, support, and guidance necessary to implement and effectuate this Order, including via the issuance of additional orders as warranted.

    b. OAs engaged in grantmaking, lending, policymaking, or rulemaking activities shall, in coordination and consultation with OGC, implement this Order and determine the most effective and efficient way of integrating the principles outlined in this Order with their existing regulations and guidance.

    c. In undertaking the integration with existing operations, and in coordination and consultation with OGC, OAs shall:

        1. Develop and issue guidance necessary to implement and effectuate this Order, or review and update any previously issued guidance to ensure consistency with this Order. OAs shall also engage in the notice-and-comment process, as appropriate and in accordance with DOT Order 2100.6B (Policies and Procedures for Rulemakings) and any corresponding regulations, to implement the requirements of this Order.

        2. Update and revise all Notices of Funding Opportunity, grant agreements, loan agreements, and other program documents as necessary to ensure compliance with Federal law and consistency with this Order.

        3. Review their existing grant agreements, loan agreements, and contracts, and, to the extent permitted by law, unilaterally amend the general terms and conditions as necessary to ensure compliance with Federal law and consistency with this Order, and provide corresponding notice of such to recipients.

d. OAs shall prepare a report describing their efforts to comply with this Order and the impact of those efforts on their grantmaking, lending, policymaking, and rulemaking activities. The first of these reports shall be submitted to OGC no later than six months after the effective date of this Order, and each subsequent report shall be due no later than six months thereafter.

e. OAs shall also observe the following principles:

1. This Order should be implemented in a simple, transparent manner that avoids adding unnecessary procedural or regulatory steps or causing undue delay. The Order should not be interpreted to impose procedural or regulatory requirements that provide no benefit in the decision-making process. The Order should be carried out in a manner that considers the impact that delays in project delivery or rulemaking may have on the economic vitality, safety, and well-being of the American people, their families, and communities.

2. OAs shall strive to promote the economic opportunities of DOT programs, policies, and activities for families and communities. Procedures shall be established or modified, as necessary, to provide meaningful opportunities for public involvement by families and communities during the planning and development of programs, policies, and activities (including the identification of potential effects, alternatives, and mitigation measures).

3. DOT shall ensure comprehensive public engagement, including with families and community stakeholders, and provide meaningful access to public information concerning both the costs and the benefits of DOT programs, policies, or activities.

4. Compliance with the terms of this Order is an ongoing responsibility. OAs shall continuously monitor their programs, policies, and activities to ensure they are administered in a manner consistent with this Order. This Order does not alter existing assignments or delegations of authority to the Operating Administrations or other DOT components.

7. <u>DISCLAIMER</u>.

This Order is intended to improve the internal management of DOT and is not intended to, nor does it, create any rights, benefits, or trust responsibility, substantive or procedural, enforceable at law or equity, by a party against the Department, its OAs, its officers, or any person. Nor should this Order be construed to create any right to judicial review involving the compliance or noncompliance with this Order by the Department, its Operating Administrations, its officers or any other person.

_____
Secretary of Transportation

# EXHIBIT B



**THE SECRETARY OF TRANSPORTATION**
WASHINGTON, DC 20590

April 24, 2025

To All Recipients of U.S. Department of Transportation Funding:

The U.S. Department of Transportation (Department or DOT) distributes substantial Federal financial assistance for thousands of projects, programs, and activities operated or initiated by diverse entities, including but not limited to State and local governments. The Department administers this Federal financial assistance to support the development and maintenance of the Nation's transportation infrastructure, pursuant to statutory authority and in accordance with binding contractual agreements in the form of Federal financial assistance agreements, usually grants, cooperative agreements, and loans. Accordingly, I write to clarify and reaffirm pertinent legal requirements, to outline the Department's expectations, and to provide a reminder of your responsibilities and the consequences of noncompliance with Federal law and the terms of your financial assistance agreements. It is the policy of the Department to award and to continue to provide Federal financial assistance only to those recipients who comply with their legal obligations.

As recipients of such DOT funds, you have entered into legally enforceable agreements with the United States Government and are obligated to comply fully with all applicable Federal laws and regulations. These laws and regulations include the United States Constitution, Federal statutes, applicable rules, and public policy requirements, including, among others, those protecting free speech and religious liberty and those prohibiting discrimination and enforcing controls on illegal immigration. As Secretary of Transportation, I am responsible for ensuring recipients of DOT financial assistance are aware of and comply with all applicable legal obligations.

The Equal Protection principles of the Constitution prohibit State and Federal governmental entities from discriminating on the basis of protected characteristics, including race. Indeed, as the Supreme Court declared in *Students for Fair Admission, Inc. v. Harvard (SFFA)*, 600 U.S. 181, 206 (2023), "[t]he clear and central purpose of the Fourteenth Amendment was to eliminate all official state sources of invidious racial discrimination in the States." The Court further noted that "[o]ne of the principal reasons race is treated as a forbidden classification is that it demeans the dignity and worth of a person to be judged by ancestry instead of by his or her own merit and essential qualities." *Id.* at 220. In ruling that race-based admissions programs at universities violated the Equal Protection Clause, the Court made clear that discrimination based on race is, has been, and will continue to be unlawful, except in rare circumstances. *Id.* at 220-21. Similarly, sex-based classifications violate the Equal Protection Clause absent "exceedingly persuasive" justification. *See United States v. Virginia*, 518 U.S. 515, 533 (1996).

These constitutional principles are reinforced by the Civil Rights Act of 1964, which prohibits discrimination based on protected characteristics in the Federal funding and employment contexts in Title VI (42 U.S.C. § 2000d *et seq.*) and Title VII (42 U.S.C. § 2000e-2), as well as the applicable non-discrimination clauses in the Federal Aid Highway Act of 1973 (23 U.S.C. §§ 140 and 324 *et seq.*), the Airport and Airway Improvement Act of 1982, (49 U.S.C. § 47123), and Title IX of the Education Amendments of 1972, as amended (20 U.S.C. § 1681 *et seq.*).

Based on binding Supreme Court precedent and these Federal laws, DOT is prohibited from discriminating based on race, color, national origin, sex, or religion in any of its programs or activities. Moreover, because DOT may not establish, induce, or endorse prohibited discrimination indirectly,[1] it must ensure that discrimination based on race, color, national origin, sex, or religion does not exist in the programs or activities it funds or financially assists.

These same principles apply to recipients of Federal financial assistance from DOT, as both a matter of Federal law and by virtue of contractual provisions governing receipt of DOT funding. Accordingly, DOT recipients are prohibited from engaging in discriminatory actions in their own policies, programs, and activities, including in administering contracts, and their employment practices.

Whether or not described in neutral terms, any policy, program, or activity that is premised on a prohibited classification, including discriminatory policies or practices designed to achieve so-called "diversity, equity, and inclusion," or "DEI," goals, presumptively violates Federal law. Recipients of DOT financial assistance must ensure that the personnel practices (including hiring, promotions, and terminations) within their organizations are merit-based and do not discriminate based on prohibited categories. Recipients are also precluded from allocating money received under DOT awards—such as through contracts or the provision of other benefits—based on suspect classifications. Any discriminatory actions in your policies, programs, and activities based on prohibited categories constitute a clear violation of Federal law and the terms of your grant agreements.

In addition, your legal obligations require cooperation generally with Federal authorities in the enforcement of Federal law, including cooperating with and not impeding U.S. Immigration and Customs Enforcement (ICE) and other Federal offices and components of the Department of Homeland Security in the enforcement of Federal immigration law. DOT has noted reported instances where some recipients of Federal financial assistance have declined to cooperate with ICE investigations, have issued driver's licenses to individuals present in the United States in violation of Federal immigration law, or have otherwise acted in a manner that impedes Federal law enforcement. Such actions undermine Federal sovereignty in the enforcement of immigration law, compromise the safety and security of the transportation systems supported by DOT

---

[1] *See SFFA*, 600 U.S. at 230; Norwood v. Harrison, 413 U.S. 455, 465 (1973).

financial assistance, and prioritize illegal aliens over the safety and welfare of the American people whose Federal taxes fund DOT's financial assistance programs.

Under the Constitution, Federal law is "the supreme Law of the Land." U.S. Const. Art. VI. That means that where Federal and State legal requirements conflict, States and State entities must follow Federal law. Declining to cooperate with the enforcement of Federal immigration law or otherwise taking action intended to shield illegal aliens from ICE detection contravenes Federal law and may give rise to civil and criminal liability. *See* 8 U.S.C. § 1324 and 8 U.S.C. § 1373. Accordingly, DOT expects its recipients to comply with Federal law enforcement directives and to cooperate with Federal officials in the enforcement of Federal immigration law. The Department also expects its recipients to ensure that the Federal financial assistance they receive from DOT is provided only to subrecipients, businesses, or service providers that are U.S. Citizens or U.S. Nationals and Lawful Permanent Residents (LPRs) or legal entities allowed to do business in the U.S. and which do not employ illegal aliens.

This letter provides notice of the Department's existing interpretation of Federal law. The Department will vigorously enforce the law on equal terms as to all its recipients and intends to take appropriate measures to assess their compliance based on the interpretation of Federal law set forth in this letter. Adherence to your legal obligations is a prerequisite for receipt of DOT financial assistance. Noncompliance with applicable Federal laws, or failure to cooperate generally with Federal authorities in the enforcement of Federal law, will jeopardize your continued receipt of Federal financial assistance from DOT and could lead to a loss of Federal funding from DOT.

The Department retains authority, pursuant to its oversight responsibilities and the terms of your agreements, to initiate enforcement actions, such as comprehensive audits and possible recovery of funds expended in a manner contrary to the terms of the funding agreement. DOT may also terminate funding in response to substantiated breaches of the terms of the agreement, or if DOT determines that continued funding is no longer in the public interest. These steps, within DOT's discretion, are intended to ensure accountability and protect the integrity of Federal programs.

To assist grant recipients in meeting their legal obligations, DOT offers technical guidance and support through its program offices. Should you require clarification regarding your obligations, you are encouraged to contact your designated DOT representative promptly. Proactive engagement is strongly advised to prevent inadvertent noncompliance.

DOT remains committed to advancing a transportation system that serves the public interest efficiently and unleashes economic prosperity and a superior quality of life for American families. This mission depends upon your strict adherence to the legal framework governing our partnership, and I trust you will take all necessary steps to comply with Federal law and satisfy your legal obligations.

Sincerely,

*[signature]*

Sean P. Duffy

# **EXHIBIT C**



**THE SECRETARY OF TRANSPORTATION**
WASHINGTON, DC 20590

July 2, 2025

To All Recipients of U.S. Department of Transportation Funding:

The U.S. Department of Transportation (Department or DOT) distributes substantial Federal financial assistance for thousands of projects, programs, and activities operated or initiated by diverse entities, including but not limited to State and local governments. DOT administers this Federal financial assistance to support the development and maintenance of the Nation's transportation infrastructure, pursuant to statutory authority and in accordance with binding contractual agreements in the form of Federal financial assistance agreements, usually grants, cooperative agreements, and loans.

As part of President Trump's agenda to end illegal discrimination, inefficient climate change policies, and other harmful initiatives in Federal programs, the President has issued several Executive Orders (E.O.) including those titled as follows: E.O. 14170, Reforming The Federal Hiring Process And Restoring Merit To Government Service; E.O. 14151, Ending Radical And Wasteful Government DEI Programs And Preferencing; E.O. 14168, Defending Women From Gender Ideology Extremism And Restoring Biological Truth To The Federal Government; E.O. 14149, Restoring Freedom of Speech and Ending Federal Censorship; E.O. 14173, Ending Illegal Discrimination and Restoring Merit-Based Opportunity; and E.O. 14154, Unleashing American Energy.

These E.O.s direct Federal agencies, where and as consistent with law, to identify and eliminate all orders, directives, rules, regulations, notices, guidance documents, funding agreements, programs, and policy statements, or portions thereof, which were authorized, adopted, or approved between noon on January 20, 2021 and noon on January 20, 2025, and which reference or relate in any way to climate change, "greenhouse gas" emissions, racial equity, gender identity, "diversity, equity, and inclusion" goals, environmental justice, or the Justice 40 Initiative.

Between noon on January 20, 2021 and noon on January 20, 2025, DOT incorporated these types of policies into the terms, schedules, exhibits, and attachments of the Department's Federal financial assistance agreements. Accordingly, I write to clarify that the Department will no longer enforce these policies, or any other requirements incorporated into its Federal financial assistance agreements that are inconsistent with the policy objectives of this Administration and current DOT leadership. More specifically, the Department considers any policies or requirements not based in statute or regulation relating or referring to climate change, "greenhouse gas" emissions, racial equity, gender identity, "diversity, equity, and inclusion" goals, environmental justice, and the Justice 40 Initiative that were incorporated into the terms, schedules, exhibits, and attachments of its Federal financial assistance agreements to be null and void and of no effect. Recipients of DOT Federal financial assistance are hereby released of their obligations to comply with these policies and requirements effective immediately.

This letter does not impose new conditions or requirements, but instead serves merely to provide notice that DOT will not enforce or require adherence to any of the aforementioned policy requirements the prior administration incorporated into the Department's Federal financial assistance agreements. The Department has removed those requirements from its Federal financial assistance agreements, and inserted language that requires compliance with already existing legal requirements, as applicable based on existing court decisions—including, among others, existing legal requirements related to immigration enforcement and the prohibition of discrimination—not the type of new sweeping policy requirements imposed by the prior administration.

As a reminder, the Department offers technical guidance and support for all recipients of DOT Federal financial assistance through its program offices. Should you require clarification regarding your obligations, you are encouraged to contact your designated DOT representative.

The Department remains committed to advancing a transportation system that serves the public interest efficiently and unleashes economic prosperity and a superior quality of life for American families and supports our partnership to achieve these goals.

Sincerely,

Sean P. Duffy