## UNITED STATES DISTRICT COURT
## DISTRICT OF RHODE ISLAND

STATE OF CALIFORNIA, et al.,

     Plaintiffs,

     v.

U.S. DEPARTMENT OF
TRANSPORTATION, et al.,

     Defendants.

Civil Action No.
25-cv-000208-JJM-PAS

## DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

The parties' cross-Motions for Summary Judgment are like two ships passing in the night. Plaintiffs' Motion rests on a feared interpretation of the Immigration Conditions that it is now clear does not exist and will not be implemented. Defendants' Motion addresses the Immigration Conditions as clarified by the Secretary of the Department of Transportation ("DOT"), which clarification makes clear that no actual case or controversy exists.

The Secretary's July 2025 letter, along with the Smith Declaration, state that the Immigration Conditions require nothing more than compliance with existing federal law and that the Conditions will not be enforced in any broader interpretation. The letter and declaration bind DOT to these positions, removing any actual case or controversy and making clear that Plaintiffs' facial challenge is unripe. *See New Hampshire v. Maine*, 532 U.S. 742, 749-51 (2001). With Plaintiffs no longer facing the concern that these Conditions impose new or onerous obligations, there is no need for any injunction.

Defendants' remaining jurisdictional and merit arguments are fully detailed in their prior briefing. Nonetheless, for the purpose of clarity, and in light of the

Supreme Court's recent decision in *Nat'l Inst. of Health v. Am. Pub. Health Ass'n*, 145 S. Ct. 2658 (2025), Defendants briefly elaborate on their jurisdictional argument and respond to Plaintiffs' arguments that DOT acted without statutory authority, arbitrarily and capriciously, and in violation of the Spending Clause.

## I. PLAINTIFFS LACK STANDING AND THEIR CLAIMS ARE UNRIPE IN LIGHT OF DOT'S COMMITMENT THAT THE IMMIGRATION CONDITIONS REQUIRE ONLY COMPLIANCE WITH EXISTING FEDERAL LAW.

As noted above, Plaintiffs' Motion for Summary Judgment is premised on speculative assertions that the Immigration Conditions impose sweeping new obligations on the Plaintiff states. But in July 2025, the Secretary issued a letter clarifying that the Immigration Conditions require nothing more than compliance with existing federal law. The Secretary's clarification eliminated any uncertainty about the reach of the Conditions. Other than a perfunctory footnote in their Motion for Summary Judgment, Plaintiffs simply ignore the Secretary's letter. Defendants, moreover, have filed a sworn declaration reiterating that the Conditions only require compliance with federal law, and committing that they will not be enforced any other way. These clarifications and representations confirm that Plaintiffs lack standing and that their claims are unripe for decision.

### A. DOT Will Enforce the Immigration Conditions Only to Require Compliance With Existing Federal Law.

DOT has clearly explained that the Immigration Conditions require no more than compliance with existing federal law. The July 2, 2025, letter from Secretary Duffy contrasted mandates of the prior administration—as not required by statute or regulation—with language the Trump Administration has inserted into agreements requiring "compliance with *already existing legal requirements* . . . including, among others, *existing legal requirements related to immigration enforcement* and the

2

prohibition of discrimination[.]" (emphasis added). Smith Decl., Ex. C at 2, ECF No. 68-1; *id*. at ¶ 7.[1] Moreover, DOT has now also stated unequivocally:

> The grant conditions requiring DOT funding recipients to cooperate with Federal immigration enforcement **do not create a new legal obligation or require recipients to take any action that is not already required by law**. Instead, the conditions merely emphasize that recipients, consistent with grant conditions generally requiring compliance with Federal law, must comply with their existing obligations under immigration-related Federal statutes and regulations, including 8 U.S.C. § 1324 and 8 U.S.C. § 1327 (as also explained in the Secretary's April 24 letter).

*Id*. at ¶ 8 (emphasis added). DOT has further committed to the following:

> **DOT will not take any investigative or enforcement actions that are inconsistent with the interpretation of the grant conditions that is expressed in this paragraph**.

*Id.* (emphasis added).

The Agency is bound by its statements that the Immigration Conditions require only compliance with existing federal law. *See generally New Hampshire v. Maine*, 532 U.S. 742, 749 (2001) ("'[W]here a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position, especially if it be to the prejudice of the party who has acquiesced in the position formerly taken by him.' . . . This rule [is] known as judicial estoppel[.]") (citation omitted); *Alt. Sys. Concepts, Inc. v. Synopsys, Inc.,* 374 F.3d 23, 32-33 (1st Cir. 2004) ("As a general

---

[1] The clarification provided by DOT is consistent with early statements that signaled that the purpose of the Immigration Conditions is to serve as a reminder of the obligation to comply with federal law relating to immigration. For example, in its January 29, 2025, Order, DOT required compliance or cooperation with Federal Immigration enforcement "to the maximum extent permitted by law." Smith Decl., Ex. A at 2-3, ECF No. 68-1. Similarly, Secretary Duffy's April 24, 2025, letter to all recipients of DOT funding stated, among other things, that its purpose was to "clarify and reaffirm pertinent legal requirements" and that "[i]t is the policy of the Department to award and continue to provide Federal financial assistance only to those recipients who comply with their legal obligations." *Id.*, Ex. B at 1.

matter, the doctrine of judicial estoppel prevents a litigant from pressing a claim that is inconsistent with a position taken by that litigant either in a prior legal proceeding or in an earlier phase of the same legal proceeding.") (citation omitted).

Moreover, although this Court earlier stated that it could not simply read the Immigration Conditions as limited to compliance with federal law, Order at 7 n.4, ECF No. 57, there is now no basis or reason for the Court to read these Immigration Conditions any other way. The government is not asking the Court to interpret any language, but only to hold DOT to its own clarification of the Immigration Conditions. *See Alt. Sys. Concepts,* 374 F.3d at 32-33. DOT has clarified definitively its own language, both through the Secretary's letter stating that the Conditions only require compliance with existing law, and the sworn representation of DOT to this Court that there will be no enforcement beyond complying with federal law. In light of these positions, there is no case before the Court where any other interpretation is threatened.

B.    Plaintiffs Lack Standing Because They Face No Injury From Agreeing to Comply With Federal Law.

The Secretary's clarification directly undercuts Plaintiffs' claim that their sovereign prerogatives would be harmed and highlights that Plaintiffs lack standing for the injunction they seek. "No principle is more fundamental to the judiciary's proper role in our system of government than the constitutional limitation of federal-court jurisdiction to actual cases or controversies." *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 341 (2006) (internal quotation marks and citation omitted). "One element of the case-or-controversy requirement" is that plaintiffs "based on their complaint, must establish that they have standing to sue." *Raines v. Byrd*, 521 U.S. 811, 818 (1997).

"The law of Article III standing, which is built on separation-of-powers principles, serves to prevent the judicial process from being used to usurp the powers

of the political branches." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 408 (2013). Moreover, the standing inquiry is "especially rigorous when reaching the merits of the dispute would force us to decide whether an action taken by one of the other two branches of the Federal Government was unconstitutional." *Raines*, 521 U.S. at 819-20. As the Supreme Court reiterated in *Clapper*,

> To establish Article III standing, an injury must be 'concrete, particularized, and actual or imminent; fairly traceable to the challenged action; and redressable by a favorable ruling.' . . . [T]hreatened injury must be *certainly impending* to constitute injury in fact, and . . . [a]llegations of possible future injury are not sufficient.

568 U.S. at 409 (internal quotation marks and citations omitted).

Agreeing to comply with federal law cannot constitute such a concrete injury to Plaintiffs' sovereignty or otherwise because the Plaintiffs are already required to comply with federal law. Plaintiffs effectively concede this when they note that "[m]ost of these statutes and directives [of some of the Plaintiff states] contain important exceptions to ensure compliance with federal law and to protect the public from violent criminals. Many authorize state and local law enforcement to work with federal civil immigration officials to facilitate the removal of certain criminals[.]" Pl. MSJ at 10, ECF No. 69. Plaintiffs do not purport to be violating or planning to violate federal law. There is no reason they cannot execute grant agreements in which they agree to comply with these provisions since they all must follow federal law.

DOT's binding interpretation of the Immigration Conditions to require only compliance with federal law also eliminates any imminent risk of the enforcement that Plaintiffs may have feared. Absent such imminent risk, the Supreme Court has made clear that a plaintiff lacks standing to seek an injunction. *See generally Clapper*, 568 U.S. at 409, 412-21 (holding that various organizations lacked standing to challenge Foreign Intelligence Surveillance Act surveillance of foreign persons with whom they expected to communicate). In *Clapper*, the Supreme Court specifically

rejected as too speculative the assertion that the government would imminently target communications to which the plaintiffs were parties. *Id.* The Court also rejected the plaintiffs' claims as too speculative because they could not demonstrate that the government would seek to use the challenged FISA provisions to target their communications or some other permitted means. *Id.* Likewise, in this case, any speculation as to whether and how the government may seek to enforce these Immigration Conditions is based upon speculation and not imminent particularized injury. For this reason, as well, their request for injunction must be denied.

C. Any Potential Claims Concerning the Application of the Immigration Conditions Are Unripe.

Similarly, Plaintiffs' challenge to the inclusion of the Immigration Conditions in grant agreements is unripe. Such facial challenges require Plaintiffs to show that "no set of circumstances exists under which [the condition] would be valid," *United States v. Salerno*, 481 U.S. 739, 745 (1987); *see also Wash. State Grange v. Wash. State Republican Party*, 552 U.S. 442, 450 (2008) (facial challenges are "disfavored"). To the extent that Plaintiffs fear that the government may have a different interpretation of what compliance with federal law means than they do, that is speculation that cannot support a facial challenge to all applications of the Immigration Conditions. *See Wash. State Grange*, 552 U.S. at 450, 456 (declining to find a new state election law unconstitutional "based on the mere possibility of voter confusion" where the state's courts had not yet had "occasion to construe the law in the context of actual disputes arising from the electoral context"). The way to address any hypothetical difference in interpretation of existing federal statutes would be an as-applied challenge should the DOT seek to enforce the Immigration Conditions to a particular grant or set of grants. *See id.* at 457-58. At that point, the affected grantee would have notice and an opportunity to be heard with respect to the proposed action.

Any such challenge is not ripe yet, where no funds have been withheld based upon the Immigration Conditions. *See Nat'l Park Hosp. Ass'n v. Dep't of Interior,* 538 U.S. 803, 807-08 (2003) (rejecting as unripe a challenge to agency's regulation absent showing of hardship and a concrete dispute where the agency applied the challenged regulation). As explained by the Court in *Nat'l Park Hosp.*,

> Ripeness is a justiciability doctrine designed 'to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies, and also to protect the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties.' . . . The ripeness doctrine is 'drawn both from Article III limitations on judicial power and from prudential reasons for refusing to exercise jurisdiction[.]'

*Id.* (citations omitted); *see also Trump v. Am. Fed'n of Gov't Emps.*, 145 S. Ct. 2635 (July 8, 2025) (staying a district court order enjoining implementation of an Executive Order and related memorandum). As Justice Sotomayor explained in her concurrence with the stay in *Am. Fed'n of Gov't Emps.*, the Executive Order directed implementation "consistent with applicable law," and those implementation plans were not yet before the Court.

Since Plaintiffs suffer no injury from agreeing to comply with federal law, and the Immigration Conditions have not yet been applied to deny them any funds, there is no justiciable issue before this Court. 145 S. Ct. at 2635 (Sotomayor, J., concurring).

## II.    THE SUPREME COURT'S *NIH* DECISION UNDERSCORES THAT PLAINTIFFS' CLAIMS ARE EITHER BARRED IN PART BY THE TUCKER ACT OR ARE NON-JUSTICIABLE.

The Supreme Court's recent decision in *Nat'l Inst. of Health v. Am. Pub. Health Ass'n*, 145 S. Ct. 2658 (2025) (hereinafter, "*NIH*") lends additional weight to Defendants' argument that Plaintiffs' claims are barred to the extent they seek monetary relief or challenge the terms of funding agreements. As noted in the Defendants' Motion for Summary Judgment, such claims fall either in the courts of

7

appeals under certain direct review statutes, *see* Def. MSJ at 15-16, ECF No. 68, or within the Tucker Act jurisdiction of the Court of Federal Claims.

In *NIH*, the Supreme Court granted the Government's request for a stay as to the District Court's judgments vacating the termination of research-related grants, finding that the District Court lacked jurisdiction to hear claims based on an "obligation to pay money" pursuant to the terms of federal grant agreements. 145 S. Ct. at 2658-59. In doing so, the Supreme Court reiterated its prior holding in *Dep't of Education v. California*, 604 U.S. 650 (2025), that "[t]he Administrative Procedure Act's 'limited waiver of [sovereign] immunity' does not provide the District Court with jurisdiction to adjudicate claims 'based on' the research-related grants or to order relief designed to enforce any 'obligation to pay money' pursuant to those grants." *Id*. (citing *California*, 604 U.S. at 651 (per curiam)). The Court further found that "the District Court likely lacked jurisdiction to hear challenges to the grant terminations, which belong in the Court of Federal Claims (CFC)." *Id*. at 2661 (Barrett, J., concurring). Justice Barrett explained further that, insofar as a plaintiff's claims challenge agency guidance documents, those claims can be disaggregated from "a claim 'founded . . . upon' contract that only the [Court of Federal Claims] can hear." *Id*. (Barrett, J., concurring) (citing 28 U.S.C. § 1491(a)(1)).[2]

The Supreme Court's recent decisions reaffirm two key jurisdictional limits. First, the APA authorizes judicial review only of <u>final agency action</u>. *See Corner Post,*

---

[2] Significantly, *NIH* underscored that the Supreme Court's decision, though issued on the emergency docket, is binding precedent and must be followed by lower courts. *NIH*, 145 S. Ct. at 2663-63 (Gorsuch, J., concurring in part). This Court is thus bound by the Supreme Court's instruction that disputes over the terms of federal grants and claims sounding in contract are committed to the Court of Federal Claims. As Justice Gorsuch stressed, "even probabilistic holdings—such as *California*'s topline conclusion that 'the Government is likely to succeed in showing the District Court lacked jurisdiction to order the payment of money under the APA,' . . . must 'inform how a [lower] court' proceeds 'in like cases,'" *Id*. (Gorsuch, J., concurring) (internal citations omitted).

*Inc. v. Bd. of Governors of Fed. Reserve Sys.*, 603 U.S. 799, 807-08 (2024) (APA "require[es] a litigant to show, at the outset of the case, that he is injured in fact by agency action" and authorizes judicial review "only for 'final agency action[.]'") (internal citations omitted). Second, where claims seek relief tied to contract terms or monetary payment and are not subject to a direct review statute, they fall under the Tucker Act and belong exclusively in the Court of Federal Claims. *NIH*, 145 S. Ct. at 2658; *California*, 605 U.S. at 651. Together, these principles bar Plaintiffs' facial challenge.

Plaintiffs gloss over the fact that the Secretary has not directed any DOT sub-agency to cancel any funding or refrain from awarding funding to any particular jurisdiction. As the Defendants argued in their Motion for Summary Judgment, here, there is no final agency action unless and until Plaintiffs have signed a grant agreement and are either denied or delayed funding due to the Immigration Conditions. Justice Barrett's concurrence in *NIH* underscored this point, casting doubt on whether agency guidance or directive, even those couched as general policy statements, constitute "final" agency action within the meaning of the APA. *NIH*, 145 S. Ct. at 2662. Compliance with federal law is not a new requirement, and Plaintiffs identify no new actionable final DOT action here, only the possibility of future enforcement of the Immigration Conditions on future grants. There is no final rule, order, or determination imposing <u>new</u> legal obligations. While Plaintiffs suggest that the Defendants will hold "hostage" funding from the Plaintiffs and that they "challenge a generally applicable policy that attempts to disqualify them from federal funding," they do not aver that Defendants have in fact disqualified any plaintiff from federal funding or taken final action to deny funding based on the Immigration Conditions. *See* Pl. MSJ at 17 n.3, 35, ECF No. 69. Nor have Plaintiffs alleged that disbursement has been unreasonably delayed, or that DOT has found them in violation of the terms and terminated any funding. Plaintiffs simply make a blanket

9

challenge to the possible future application of these Conditions to hypothetical grantees—including to potential recipients of competitive grants, for which there is no automatic statutory right to funding, and awards are made at the agency's discretion based on criteria in the funding opportunity announcements. *See* Louie Decl. at ¶¶ 5, 7, ECF No. 68-2; *c.f. New York v. Kennedy*, No. 25-1780, 2025 WL 2658233, at *5 (1st Cir. Sept. 17, 2025) (denying government's motion to stay preliminary injunction and rejecting argument that an HHS "Communiqué" was not reviewable final agency action because "it was followed, just days later, by the Department's dismantling of sub-agencies and a RIF," thereby amounting to a "'consummation' of the agency's decisionmaking process" that had "legal consequences") (internal citation omitted). But without such finality, the APA does not provide a cause of action here. *Corner Post*, 603 U.S. at 809.

Because Plaintiffs seek to litigate a hypothetical dispute, not a final agency action that has an immediate concrete harm, this Court is without jurisdiction to review their claims. The First Circuit's recent order in *Rhode Island v. Trump*, No. 25-1477, 2025 WL 2621593 (1st Cir. Sept. 11, 2025), denying the government's request to stay pending appeal of the lower court's preliminary injunction, is consistent with this position. That case involves a challenge to various federal agencies' termination of employees and cancellation of several grants. *Id.* The First Circuit rejected the government's argument that the plaintiffs lacked standing because, among other things, the plaintiffs had gone beyond merely alleging that they "will be injured simply by the Executive's general failure to adhere to the separation of powers in the abstract." *Id.* at *6. There, the defendants had already begun terminating grants and employees, and the court underscored that the plaintiffs had already been injured by the denial of funds to which they were entitled. *Id.* Distinguishing *McMahon v. New York*, 145 S. Ct. 2643 (2025), where the Supreme Court stayed a preliminary injunction pending appeal, the First Circuit recognized

10

that a plausible demonstration of an "injury in fact" requires at least a showing that the "losses of funding and services of which the plaintiffs complain have [occurred] or will imminently occur due to the defendants' decisions." *Rhode Island*, 2025 WL 2621593, at *6. Plaintiffs have made no such showing here as their "alleged injuries depend on attenuated chains of speculation." *See id*.

## III.   DOT POSSESSES BROAD STATUTORY AUTHORITY TO IMPOSE CONDITIONS.

Contrary to Plaintiffs' claims, statutory authority exists to require Plaintiffs to comply with federal law in the form of the very federal statutes with which they are being required to comply. Because the Immigration Conditions only reiterate requirements of existing federal law, all of which were all explicitly enacted by Congress, they are necessarily Congressionally authorized requirements with which the Plaintiffs must comply. Nothing prohibits DOT from reminding grantees of their obligations to comply with federal laws, including federal immigration laws.[3] Because Plaintiffs do not address the clarification that these Conditions only reiterate federal law, they fail to address the original Congressional authority for these requirements.

Plaintiffs' Motion also ignores the broader context of the Agency's mission, as set forth by Congress and explained in the Defendants' Motion. *See* Def. MSJ at 39, ECF No. 68. In 49 U.S.C. § 101(a), Congress expressly charged DOT with promoting the "general welfare, economic growth and stability, and security of the United States." Plaintiffs overlook this statutory provision in their Motion, which establishes national security and safety as central elements of DOT's mission. The Immigration Conditions fit within those statutory purposes: ensuring that federally funded transportation infrastructure is not used to frustrate national security and law

---

[3] *See generally Planned Parenthood Fed'n of Am. Inc. v. Kennedy*, No. 25-1698 (1st Cir. Sept. 11, 2025) (staying lower court's order enjoining agency from carrying out express will of Congress).

enforcement objectives. DOT's grant programs are nationwide in scope and designed to advance these broad congressional purposes. The Immigration Conditions can serve those purposes by preventing federally funded projects from being undermined by policies that obstruct enforcement of federal law. *See* Smith Decl. at ¶ 3, ECF No. 68-1.

Plaintiffs' argument that DOT may only impose conditions expressly enumerated by Congress also ignores longstanding precedent. Agencies may impose conditions reasonably related to statutory purposes even absent express enumeration. *See, e.g.*, *Lincoln v. Vigil*, 508 U.S. 182, 193-94 (1993) (reallocation of agency resources as envisioned by Indian Health Service clearly fell within agency's statutory mandate to provide health care to Indian people even though congressional appropriations Acts did not mention the particular program that was discontinued, which was funded through lump-sum appropriations).

## IV.  THE CONDITIONS ARE REASONABLE AND CONSTITUTIONAL.

DOT provided a reasoned basis for the Immigration Conditions: ensuring that recipients of federal funds do not obstruct federal law enforcement in violation of federal law. The Secretary's reiteration of grantees' obligations to comply with federal law, including federal immigration laws, reflects an exercise of discretion in light of evolving national security concerns. DOT has not acted contrary to law, unconstitutionally, or arbitrarily and capriciously.

Especially given that the Conditions require nothing beyond compliance with existing federal law, DOT has not run afoul of the Spending Clause per *S. Dakota v. Dole*, 483 U.S. 203 (1987). The Immigration Conditions do not require any Plaintiff state to enact new laws or commandeer state officials. Because the Conditions impose no new requirements on the Plaintiffs, there is no undue coercion from reiterating an existing requirement of federal law. Plaintiffs themselves concede that many Plaintiff

states already account for compliance with federal law in their statutes and directives, while others have not imposed any categorical limitations on the use of law enforcement resources to assist in enforcing federal immigration law. Pl. MSJ at 10, ECF No. 69. Unlike the Medicaid expansion invalidated in *Nat'l Fed'n of Indep. Bus. v. Sebelius*, 567 U.S. 519 (2012), the Conditions require nothing new from the Plaintiffs.

Because the Conditions require only compliance with existing federal law, there is also no ambiguity—other than what may exist in existing federal statutes—which must be addressed, if it exists, in an as-applied challenge to those laws or their application to an actual funding denial.

Moreover, as already addressed, the Secretary determined that there is a direct relationship between immigration enforcement and transportation infrastructure. *See* Smith Decl., Ex. B (April 24, 2025, Letter from Secretary Duffy), ECF No. 68-1. National security and transportation safety are core elements of DOT's mission under 49 U.S.C. § 101(a). *See also id*. at ¶ 3. Immigration enforcement and transportation security are inextricably linked, as transportation systems serve as gateways for international movement of persons and goods. Transportation hubs, ports, airports, and highways, therefore, are critical sites for immigration enforcement and national security. Ensuring that federally funded transportation systems do not obstruct federal law directly advances DOT's statutory responsibilities.

## <u>CONCLUSION</u>

For these reasons, and those set forth more fully in the Defendants' Motion for Summary Judgment, Plaintiffs' Motion should be denied, and summary judgment should be entered for the Defendants.

Dated: September 24, 2025

Respectfully submitted,

U.S. DEPARTMENT OF
TRANSPORTATION, et al
By their Attorneys,

/s/ *Sara Miron Bloom*
SARA MIRON BLOOM
Acting United States Attorney
RACHNA VYAS
Assistant United States Attorney
One Financial Plaza, 17th Floor
Providence, RI 02903
(401) 709-5000
Rachna.vyas@usdoj.gov

## CERTIFICATION OF SERVICE

I hereby certify that, on September 24, 2025, I filed the foregoing document through this Court's Electronic Case Filing (ECF) system, thereby serving it upon all registered users in accordance with Federal Rule of Civil Procedure 5(b)(2)(E) and Local Rules Gen 304.

/s/ *Sara Miron Bloom*
Acting United States Attorney

14